| | |
|---|---|
| RENEA SMITH MILTON,          )  | |
|                              )  | |
| Plaintiff,                   )  | |
|                              )  | |
| vs.                          )  | |
|                              )  | |
| TEACHERS INSURANCE AND       )  | |
| ANNUITY ASSOCIATION OF       )  | |
| AMERICA; TIAA-CREF INDIVIDUAL )  | |
| AND INSTITUTIONAL SERVICES,  )  | |
| LLC; and SEAN WOODROFFE,     )  | |
| AS EXECUTIVE VICE PRESIDENT  )  | |
| AND CHIEF HUMAN RESOURCES    )  | |
| OFFICER,                     )  | |
|                              )  | |
| Defendants.                  )  | |
|                              )  | |

**COMPLAINT**

PRELIMINARY STATEMENT[1]

RENEA SMITH MILTON ("Plaintiff") brings this action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") against Teachers Insurance and Annuity Association of America ("TIAA"), TIAA-CREF Individual and Institutional Services, LLC ("Services"), and Sean Woodroffe, as Executive Vice President and Chief Human Resources Officer ("Woodroffe"). Plaintiff brings this ERISA action on account of breaches of fiduciary duties owed to Plaintiff by Defendants and for other appropriate equitable relief.

---

[1] This Preliminary Statement gives a synopsis of Plaintiff's claim and is not intended as an allegation to be answered by Defendants.

## PARTIES

1. Plaintiff is a citizen and resident of Charlotte, North Carolina.

2. TIAA is a properly organized business entity doing business in the state of North Carolina.

3. Services is a properly organized business entity doing business in the state of North Carolina.

4. Woodroffe is a citizen and resident of New York.

5. The TIAA Voluntary Separation Plan ("Plan") is an employee welfare benefit plan organized and subject to ERISA, 29 U.S.C. §§ 1001, *et. seq.* and the regulations promulgated thereunder. At all times pertinent to this action, TIAA and Services were the sponsors of and maintained the Plan. TIAA and Woodroffe serve as the Plan Administrator of the Plan and in other fiduciary capacities under the Plan. Services serves in other fiduciary capacities under the Plan.

## JURISDICTION AND VENUE

6. This court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims arise under the laws of the United States. Specifically, Plaintiff brings this action for other appropriate equitable relief under ERISA § 502, 29 U.S.C. § 1132.

7. Venue in the Western District of North Carolina is appropriate by virtue of TIAA and Services doing business and being found in this district, the administration of the Plan in this district, and the breach of fiduciary duty to Plaintiff occurring in this district.

## FACTUAL ALLEGATIONS

8. Plaintiff began working for TIAA in or around 1987.

9. Plaintiff's last position with TIAA was as the Manager of the Beneficiary Relationship Unit in addition to Co-Chairing the African American Employee Resource Group. In her role as Manager of the Beneficiary Relationship Unit, since 2009, Plaintiff managed the death claims area for TIAA. In or about 2014, Plaintiff's brother passed away.

10. On July 9, 2015, because of the death of her brother, Plaintiff decided that she wanted to find another job within TIAA outside of the death claims area. However, Plaintiff was unable to find another job within TIAA into which she could internally transfer.

11. Because Plaintiff could not find another job within TIAA, she decided that she may want to terminate her employment with TIAA and look elsewhere for a job. Plaintiff prepared a resignation letter that she presented to TIAA Human Resources officials on July 9, 2015. Plaintiff met with her manager and told the manager that Plaintiff was going to terminate her employment after July 9, 2015 because of the death of her brother.

12. Unbeknownst to Plaintiff, at the time that Plaintiff was in the process of communicating her resignation to TIAA, TIAA had already formulated and adopted a Voluntary Separation Program under the Plan. The Voluntary Separation Program would allow employees (i) age 50 or older, with 10 years or more of service, or (ii) age 55 or older, with 5 years or more of service, to receive certain benefits by resigning from TIAA's employment. The Voluntary Separation Program would allow employees who resigned to receive (i) additional compensation for a period of time, (ii) additional bonus money, and (iii) additional health insurance under the TIAA group health insurance plan.

13. In 2015, before her resignation, Plaintiff was age 53 and had 27 years of service with TIAA, and therefore would have qualified for eligibility under the terms of the Voluntary Separation Program that TIAA adopted.

-3-
Case 3:18-cv-00354-MOC-DSC   Document 1   Filed 07/03/18   Page 3 of 13

14. Although TIAA had adopted the Voluntary Separation Program prior to Plaintiff's resignation, it had not informed all employees of the program. TIAA had, however, told its Human Resources employees and its senior employees, including Plaintiff's Manager, of the existence of, and imminent announcement of, the Voluntary Separation Program. In addition to the Human Resources and senior employees, many other employees of Defendant TIAA, including both management employees as well as non-management employees, were aware of the severance program adoption and its imminent implementation, in part because they had been told about the program by employees in the Human Resources Department. However, Plaintiff was not aware of the severance program and had not been told about it by anyone, including anyone at TIAA.

15. The Voluntary Separation Program had been adopted, or in the alternative, was under serious consideration by Defendant TIAA at the time that Plaintiff discussed her resignation with, and presented her resignation to, the Human Resources Department.

16. Plaintiff handed in her resignation letter on July 9, 2015 and sent an e-mail to her colleagues telling them she was leaving.

17. In response to Plaintiff's e-mail, the Director of Human Resources for TIAA e-mailed Plaintiff back and wrote, "Can we talk?," or words to that effect. When Plaintiff telephoned the Director, the Director asked Plaintiff if she had another job, but there was no further conversation.

18. That same day, shortly after the conversation with the Director of HR, another Senior Director who also worked at TIAA emailed Plaintiff and asked her to call him (the Senior Director) offline.

19. Plaintiff called the Senior Director as requested. The Senior Director informed Plaintiff that TIAA had adopted and would shortly be offering a voluntary separation package to employees. He encouraged Plaintiff to rescind her resignation so that she could be eligible for the package.

20. That same day, July 9, 2015, Plaintiff talked to her manager and said she wanted to rescind her resignation. Plaintiff's manager gave her back the resignation letter. Plaintiff then sent an e-mail informing colleagues that she would not be resigning and would stay employed at TIAA.

21. Later that same day, July 9, 2015, Kenya Odoms, an employee in the Human Resources Department, told Plaintiff that TIAA was filling her role and that she could not rescind her resignation under any circumstances. Ms. Odoms told Plaintiff that she had to leave TIAA's premises and that she was considered to have resigned on July 9, 2015.

22. The very next day, July 10, 2015 at 10:00 am, TIAA announced the previously adopted Voluntary Separation Program to its employees through the Human Resources Department.

23. Because TIAA deemed Plaintiff to have resigned on July 9, 2015, and would not allow her to rescind her resignation, she was not able to participate in the Voluntary Separation Program.

24. As plan administrator of the Plan, TIAA and Woodroffe are fiduciaries as defined in ERISA § 3(21), 29 U.S.C. § 1002(21), because TIAA and Woodroffe have discretionary authority or discretionary responsibility in the administration of the Plan, and are both named in the Plan as the Plan Administrator. Alternatively, to the extent a proper plan administrator is not named in the Plan, TIAA and Services are the plan administrator under ERISA §3(16), 29 U.S.C.

§1002(16) because they are the plan sponsors of the Plan (TIAA, Services, and Woodroffe collectively, "Defendants").

25. As the Plan administrator, Defendants are obligated to, and responsible for, disseminating information regarding the Plan and the benefits under the Plan to potential Plan participants.

26. Defendants provided information to employees in the HR Department and other Senior Management, including Plaintiff's manager, regarding the Voluntary Separation Program that was imminently about to occur before Plaintiff submitted her resignation. Employees in the HR Department further disseminated information regarding the Voluntary Separation Program to other management and non-management employees, including to employees outside of the Human Resources Department.

27. Defendants knew or should have known that Plaintiff would be eligible for the Voluntary Separation Program because they had information regarding Plaintiff's age and her years of service with TIAA. In addition, Defendants knew or should have known that Plaintiff would be interested in the Voluntary Separation Program because Plaintiff told people in the HR Department and her manager that she was considering terminating her employment. Finally, Plaintiff was, at the time of her resignation, participating in other employee benefit plans sponsored by TIAA, including its health insurance program, which is also subject to ERISA as an employee welfare benefit plan.

28. In failing to provide Plaintiff any information about the imminent Voluntary Separation Program, Defendants acted as Plan Administrator and in a fiduciary capacity because they failed and refused, either by commission or omission, to provide Plaintiff necessary and important information about benefits for which Plaintiff would have been eligible.

29. The Human Resource employees speaking (and failing to speak) to Plaintiff about potential imminent employee benefits were acting and speaking on behalf of Defendants, as Plan Administrator and fiduciaries.

30. Defendants, as Plan Administrator, provided the Human Resource employees, including the Human Resources Director and Kenya Odom, actual and apparent authority to inform Plan participants about the terms and conditions of the Plan. They did this by establishing those employees as the Human Resource employees who would inform TIAA's Charlotte employees about their employee benefits, including the Plan, and actually providing them with such information.

31. In informing and failing to inform Plaintiff about the Plan terms and benefits, the HR Director, Kenya Odoms, and other employees of TIAA acted and spoke on behalf of Defendants, as Plan Administrator and fiduciaries.

32. Because of the lack of information provided by Defendants, including through the Human Resources and management employees (including Plaintiff's manager), regarding the imminent Voluntary Separation Program, Plaintiff relied on the absence of any information by Defendants, including TIAA's Human Resource employees, regarding any benefits for which Plaintiff may imminently become entitled.

33. Plaintiff's reliance on the lack of information provided by the Human Resource Department employees regarding any benefits for which Plaintiff may become eligible was reasonable because Defendants, as Plan Administrator and fiduciaries, gave the Human Resources Department employees actual and apparent authority to disseminate information and provide employees assistance regarding their employee benefits.

34. Because Plaintiff was not told that she may be eligible for Voluntary Separation Program benefits, Plaintiff was forced to resign on or about July 9, 2015, rendering her ineligible for the Voluntary Separation Program based on its terms. Had Defendants correctly discharged their fiduciary duties and told Plaintiff of the imminent Voluntary Separation Program, Plaintiff would not have resigned and would have continued in employment, so that she would have been eligible for, and would have elected, participation in the Voluntary Separation Program.

35. At no time during her employment with Defendant TIAA, including through the time that she submitted her resignation, did Plaintiff receive any summary plan description for the Plan or any other writing describing the terms and conditions of the Plan, including the Voluntary Separation Program.

FIRST CLAIM FOR RELIEF:
OTHER APPROPRIATE EQUITABLE RELIEF
PURSUANT TO ERISA § 502, 29 U.S.C. §1132

36. Plaintiff reincorporates and realleges the allegations contained at paragraphs 1-35 above.

37. As plan administrator of the Plan, Defendants are fiduciaries as defined in ERISA § 3(21), 29 U.S.C. § 1002(21), because they have discretionary authority or discretionary responsibility in the administration of the Plan.

38. Defendants breached their fiduciary duties by failing to distribute a summary plan description of the Plan to Plaintiff by a method reasonably calculated to ensure receipt by her.

39. Defendants also breached their fiduciary duties to Plaintiff by failing to monitor the distribution of information regarding Plan benefits by employees performing their duties as Plan Administrator. Defendants failed and refused to provide accurate and complete information to Plaintiff.

40. Defendants also breached their fiduciary duties by failing to provide accurate and truthful information to Plaintiff regarding her eligibility for the Voluntary Separation Program.

41. Defendants also breached their fiduciary duties by failing to provide information to Plaintiff regarding her eligibility for the Voluntary Separation Program, because Defendants, as Plan administrator and through the Human Resources employees, knew (i) Plaintiff met the eligibility criteria prior to her resignation, (ii) Plaintiff was considering resigning from TIAA, and (iii) Plaintiff was participating in TIAA's group health insurance program, which participation would have been enhanced by participation in the Voluntary Separation Program.

42. Plaintiff reasonably relied on the information (or lack of information) provided her by Defendants and TIAA's employees regarding Plaintiff's eligibility for the Voluntary Separation Program, and such reliance was to her detriment, in that Plaintiff resigned before the Voluntary Separation Program was provided, which ultimately occurred the very next day after Plaintiff's resignation and TIAA's refusal to allow Plaintiff to rescind her resignation.

43. Plaintiff was prejudiced by the information (or lack of information) provided her by Defendants, as well as TIAA and its employees, regarding her eligibility for the Voluntary Separation Program, and such reliance was to her detriment, in that Plaintiff resigned before the Voluntary Separation Program was provided, which ultimately occurred the very next day after Plaintiff's resignation, and Defendants refused to allow Plaintiff to rescind her resignation.

44. Plaintiff has suffered harm by the conduct of Defendants as alleged herein.

45. Plaintiff is entitled to equitable relief:

    a. ordering that Plaintiff is eligible for and may participate in the Plan and Voluntary Separation Program;

    b. requiring that Defendants provide Plaintiff an accounting of amounts or

benefits to which she would have been entitled under the Voluntary Separation Program, absent Defendants' failure and refusal to provide her information about that program;

  c. imposing an equitable lien on the Plan benefits that have been denied Plaintiff as a result of Defendants' failure and refusal to provide her information about that program;

  d. imposing a constructive trust on the Plan benefits that have been denied Plaintiff as a result of Defendants' failure and refusal to provide her information about that program;

  e. enjoining Defendants from reducing all benefits to which Plaintiff would have been entitled under the Voluntary Separation Program had Defendants correctly informed Plaintiff about that program in compliance with their fiduciary duties;

  f. imposing a surcharge upon Defendants requiring that they pay to Plaintiff the money Plaintiff would have received under the Voluntary Separation Program had Defendants correctly informed Plaintiff about that program in compliance with its fiduciary duties;

  g. equitably estopping Defendants from denying Plaintiff all the benefits she would have received under the Voluntary Separation Program had Defendants correctly informed Plaintiff about that program in compliance with its fiduciary duties;

  h. granting Plaintiff restitution for the amount of benefits that she would have received under the Voluntary Separation Program had Defendants correctly informed Plaintiff about that program in compliance with their fiduciary duties;

  i. ordering that Plaintiff is entitled to benefits under the Plan as if Defendants had correctly informed Plaintiff about that program in compliance with their

fiduciary duties and permitted Plaintiff to elect participation in the Plan; and

  j.  Other appropriate declaratory, injunctive, and equitable relief.

<u>SECOND CLAIM FOR RELIEF:
ATTORNEY'S FEES UNDER ERISA § 502, 29 USC § 1132</u>

46.  Plaintiff reincorporates and realleges the allegations contained at paragraphs 1-45 above.

47.  Plaintiff is entitled to her attorney's fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiff prays that the Court:

1.  Grant Plaintiff equitable relief:

  a.  ordering that Plaintiff is eligible for and may participate in the Plan and Voluntary Separation Program;

  b.  requiring that Defendants provide Plaintiff an accounting of amounts or benefits to which she would have been entitled under the Voluntary Separation Program, absent Defendants' failure and refusal to provide her information about that program;

  c.  imposing an equitable lien on the Plan benefits that have been denied Plaintiff as a result of Defendants' failure and refusal to provide her information about that program;

  d.  imposing a constructive trust on the Plan benefits that have been denied Plaintiff as a result of Defendants' failure and refusal to provide her information about that program;

  e.  enjoining Defendants from reducing all benefits to which Plaintiff would have been entitled under the Voluntary Separation Program had Defendants correctly informed Plaintiff about that program in compliance with its fiduciary duties;

f. imposing a surcharge upon Defendants requiring that they pay to Plaintiff the money Plaintiff would have received under the Voluntary Separation Program had Defendants correctly informed Plaintiff about that program in compliance with their fiduciary duties;

g. equitably estopping Defendants from denying Plaintiff all the benefits she would have received under the Voluntary Separation Program had Defendants correctly informed Plaintiff about that program in compliance with their fiduciary duties;

h. granting Plaintiff restitution for the amount of benefits that she would have received under the Voluntary Separation Program had Defendants correctly informed Plaintiff about that program in compliance with its fiduciary duties;

i. ordering that Plaintiff is entitled to benefits under the Plan as if Defendants had correctly informed Plaintiff about that program in compliance with their fiduciary duties and permitted Plaintiff to elect participation in the Plan; and

j. Other appropriate declaratory, injunctive, and equitable relief.

2. Award Plaintiff all reasonable attorney fees and expenses under ERISA § 502(g), 29 U.S.C. § 1132(g), incurred herein; and

3. Enter an award for such other and further relief as may be just and appropriate.

Dated this the 3rd day of July 2018.

                                      Respectfully Submitted,

                                      */s/ Rachel Matesic*
                                      Bryan L. Tyson
                                      Rachel Matesic
                                      **MARCELLINO & TYSON, PLLC**
                                      2820 Selwyn Ave., Suite 350
                                      Charlotte, NC 28209
                                      (704) 919-1519 (telephone)
                                      (980) 219-7025 (facsimile)
                                      E-mail: bryan@yourncattorney.com
                                      E-mail: rachel@yourncattorney.com